BENNETT J. LEE (Bar No. 230482)
NICHOLAS A. MERRELL (Bar No. 240795)
STEVEN P. CHASEY (Bar No. 322006)
PAOLO A. HERMOSO (Bar No. 324185)
VARELA, LEE, METZ & GUARINO, LLP
333 Bush Street, Suite 1500
San Francisco, CA  94104
Telephone:   415-623-7000
Facsimile:    415-623-7001
blee@vlmglaw.com
nmerrell@vlmglaw.com
schasey@vlmglaw.com
phermoso@vlmglaw.com

Attorneys for Plaintiffs
CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY and
CHEVRON MINING INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY, a California corporation; CHEVRON MINING INC., a Missouri corporation. <br><br> Plaintiffs, <br><br> vs. <br><br> SKANSKA USA CIVIL WEST ROCKY MOUNTAIN DISTRICT, INC., a Delaware corporation. <br><br> Defendant. | Case No. <br><br> **COMPLAINT BY CHEVRON MINING INC. AND CHEVRON ENVIRONMENTAL MANAGEMENT COMPANY FOR:** <br><br> 1) DECLARATORY RELIEF; <br> 2) INJUNCTIVE RELIEF; <br> 3) BREACH OF CONTRACT; AND <br> 4) EXPRESS INDEMNITY |

Plaintiffs Chevron Environmental Management Company and Chevron Mining Inc.s (collectively "Chevron"), by and through its undersigned counsel of record, hereby submits its Complaint against Skanska USA Civil West Rocky Mountain District, Inc. ("Skanska"), as follows:

**INTRODUCTION**

1. This dispute arises out of the design and construction of a water treatment plant at the Questa Mine located in Taos County, New Mexico (the "Project"). The plant is owned by

1  Chevron. Chevron hired Tetra Tech EC, Inc. ("Tetra Tech") to serve as the prime contractor for
2  the Project. In turn, Tetra Tech subcontracted most of the construction work to Skanska.

3        2.      Tetra Tech and Skanska engaged in a two-party arbitration ("Skanska
4  Arbitration") to resolve Skanska's claims for additional work and delay damages on the Project,
5  resulting in a sizable award in Skanska's favor.

6        3.      Now, Chevron and Tetra Tech are engaged in another two-party arbitration
7  ("Chevron/TT Arbitration"), wherein Tetra Tech is attempting to pass-through against Chevron
8  $9,538,991 of Skanska's arbitration award, representing Skanska's claims for $6,790,574 in
9  delay damages and $2,748,417 for change order work. Through discovery in this arbitration
10 proceeding, Chevron requested the pleadings, transcripts of sworn deposition and hearing
11 testimony, and expert reports related to the Skanska Arbitration. However, the arbitration panel
12 refused, holding that it lacked authority to compel Tetra Tech's production of the Skanska
13 Arbitration documents.

14       4.      Based on its express indemnity rights against Skanska, Chevron also tendered the
15 defense of Tetra Tech's claims and requested indemnity from Skanska. Skanska's counsel
16 acknowledged receipt but failed to respond.

17       5.      Having exhausted its ability to obtain the Skanska Arbitration materials through
18 discovery in the Chevron/TT Arbitration, Chevron now looks to Skanska to honor its contractual
19 obligation to produce these records as part of its duty under the Skanska Subcontract to comply
20 with Chevron's audit rights. Chevron also looks to Skanska to honor its contractual obligation to
21 defend and indemnify Chevron against Tetra Tech's pending claims.

## PARTIES

23       6.      Plaintiff Chevron Mining, Inc. is a Missouri corporation with a principal place of
24 business in San Ramon, California.

25       7.      Plaintiff Chevron Environmental Company is a California corporation with a
26 principal place of business in San Ramon, California.

27       8.      Upon information and belief, Defendant Skanska is a Delaware corporation with a
28 principal place of business in Phoenix, Arizona. Skanska entered into a subcontract with the

prime contractor on the Project, Tetra Tech, to serve as a major trade subcontractor on the Project.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction based on diversity under 28 U.S.C. § 1332(a) as both parties are citizens of different states, and the amount in controversy exceeds $75,000.

10. Venue is proper under this District, pursuant 28 U.S. Code § 1391(b), because a substantial part of the events giving rise to the claim occurred in this District and within this Division. Skanska also has an office in San Francisco and is subject to personal jurisdiction in this District and Division.

## GENERAL ALLEGATIONS

**A.   Contract Background**

11. On or around March 4, 2013, Chevron contracted with Tetra Tech for the design and construction of the Project pursuant to the agreement titled "Engineering, Procurement, Construction and Installation Contract No. CMI-Q-2013-018-01," dated March 4, 2013 (the "EPC Contract"). On October 31, 2013, Chevron and Tetra Tech entered into Amendment 1 of the EPC Contract, which effectively contains the pertinent terms and conditions of that agreement. A true and correct copy of Amendment 1 to the EPC Contract, is attached hereto as Exhibit A.

12. Section 26 of the EPC Contract contains audit rights broad in scope, and provides in relevant part as follows:

> **26.2 Records**. Contractor[1] shall establish and maintain, and ensure that other members of Contractor Group[2] establish and maintain, all Records that are necessary and appropriate in accordance with good management practice (under the circumstances of this Contract) to record accurately and completely all of the following:
> ***
> (B) The liability for and calculation of all amounts payable by Company to Contractor under this Contract.
>
> **26.4 Inspection of Records**. Company may, at any time, and at its own cost, inspect … all Records held by Contractor Group that relate to Sections 26.2(A) through 26.2(D) until

---

[1] "Contractor" is defined as Tetra Tech.
[2] "Contractor Group" is defined to include all of Tetra Tech's subcontractors, such as Skanska.

- 3 -
CHEVRON'S COMPLAINT

> at least twenty-four months from the end of the calendar year in which this Contract is completed or terminated.
>
> **26.5 Access and Assistance**. Contractor shall provide, and shall ensure that other members of Contractor Group provide, all Records requested by Company or its representatives for the purpose of inspection under Section 26, and full assistance in performing the inspection and accessing those Records.

13. Accordingly, the terms of the EPC Contract mandate that Tetra Tech and its subcontractors, including Skanska, provide all documents related not just to Tetra Tech's costs on the Project, but also all records related to Tetra Tech's performance of work and liability, upon Chevron's request.

14. Tetra Tech subsequently entered into a subcontract agreement with Skanska titled "Subcontract Agreement No. 114-050055-CWP-06" (the "Skanska Subcontract"), in which Skanska agreed to provide, furnish, and install all materials and labor for the Project to the satisfaction of Chevron as a third-party beneficiary. A true and correct copy of the Skanska Subcontract is attached hereto as Exhibit B.

15. The EPC Contract, including its audit provisions, was incorporated into the Skanska Subcontract. Specifically, Section 2.1 of the Skanska Subcontract provides in pertinent part:

> Subcontractor agrees to abide by and assume toward TT all duties and obligations owed by TT to Chevron Mining Inc. as specified in the terms, conditions, and covenants of the Prime Contract between Chevron Mining Inc. hereinafter referred to as "the Company" and Tetra Tech Inc. dated March 4, 2013, and Amendment No. 1 to engineering, Procurement and Construction Management Services Contract No. CMI-Q2013-018 dated October 31, 2013.

Section 2.2 of the Skanska Subcontract makes unmistakably clear that Skanska is bound to comply with all terms and conditions of the EPC Contract:

> The contract documents consist of this AGREEMENT, Exhibits 1 thru 6, the Prime Contract, **any and all conditions of the Prime Contract**, (General Supplementary, and other), construction schedules, drawings, specifications, and all addenda and modifications for the Project issued subsequent to this AGREEMENT.

(Emphasis added.)

16. Section 9.1 of the Skanska Subcontract also provides that Chevron is an express

1  indemnitee under the indemnity clause contained therein:

> To the fullest extent permitted by law, the Subcontractor shall defend, indemnify, and hold harmless TT, the Company, and their respective agents from and against any and all claims, actions, losses, damages and liabilities arising out of the performance of the Subcontractor's work, or the acts or omissions of the Subcontractor's employees, agents, or representative including sub-Subcontractors, or by reason of liability imposed by operation of law, for bodily injury (including exposure toxic substances), illness, or death sustained by any person regardless of whether such claim, action, or liability is caused in part by a party indemnified hereunder.

### B. Skanska Arbitration

17. On or about May 3, 2018, Skanska initiated arbitration against Tetra Tech to resolve the parties' claims for additional work and delay damages on the Project. The evidentiary hearing in the Skanska Arbitration was held in Denver, Colorado, beginning on March 12, 2018, and continuing through March 28, 2018.

18. On or about July 31, 2018, a final award was rendered in the Skanska Arbitration. A true and correct copy of Skanska's arbitration award is attached hereto as Exhibit C. In virtually all respects, the panel awarded Skanska damages against Tetra Tech. However, the panel reduced Skanska's overall award based on a finding that significant delay on the Project was also attributable to Skanska. Specifically, the panel found that Skanska materially delayed pipe support installation on the Project, which reduced the total amount of delay attributable to Tetra Tech. After deducting a total of $1,200,774 from Skanska's award based on said delays, the panel entered a final award in favor of Skanska in the amount of $11,030,087, plus interest.

### C. Chevron/TT Arbitration

19. On or about April 30, 2018, Chevron submitted its formal Demand for Arbitration against Tetra Tech in the Chevron/TT Arbitration. Chevron and Tetra Tech assert substantial claims against each other arising from work on the Project.

20. On or about June 4, 2019, Chevron tendered a request to Skanska for defense and indemnification from and against Tetra Tech's claims in the Chevron/TT Arbitration arising from Skanska's performance on the Project. A true and correct copy of the tender letter to Skanska is attached hereto as Exhibit D.

21. To date, Skanska has failed to honor its contractual defense and indemnity obligations.

22. Following the issuance of the Skanska Arbitration award, Chevron sought to compel the production of documents from the Skanska Arbitration, including the pleadings, transcripts of sworn deposition and hearing testimony, and expert reports.

23. The panel entered an order partially granting Chevron's motion, but the panel limited the scope of Tetra Tech's required production to only the amount of the Skanska Arbitration award, a redacted copy of the settlement agreement between Tetra Tech and Skanska, and the Project related exhibits from the Skanska Arbitration. The panel denied Chevron's motion as to all other categories of documents, including the deposition and hearing transcripts and expert reports.

24. On or about July 3, 2019, Chevron sought to enforce its audit rights against Skanska as a third-party beneficiary of the Skanska Subcontract by requesting that Skanska allow access to and assist Chevron in inspecting documents relating to the Skanska Arbitration, including transcripts of depositions and hearing testimony, and documents relating to negotiated settlements between Skanska and Tetra Tech. A true and correct copy of the audit request to Skanska is attached hereto as Exhibit E.

25. Tetra Tech and Skanska included broad flow-down obligations in the Skanska Subcontract, which necessarily included Skanska's compliance with Chevron's audit rights under Section 26 of the EPC Contract.

26. Tetra Tech has failed and/or refuses to allow Chevron to complete such an audit.

**FIRST CAUSE OF ACTION**

**[Declaratory Relief]**

27. Chevron realleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

28. Section 26 of the EPC Contract confers Chevron audit rights broad in scope. The EPC Contract specifically mandates Tetra Tech and its subcontractors, including Skanska, to provide all documents relating to Tetra Tech's costs on the Project and Tetra Tech's performance

of work and liability. Such documents necessarily include the Skanska Arbitration materials.

29. The Skanska Subcontract expressly incorporates the EPC Contract, including its audit provisions. Specifically, Section 2.1 provides that Skanska agrees to abide by and assume all duties and obligations owed by Tetra Tech to Chevron, as specified under the terms, conditions, and covenants of the EPC Contract.

30. There exists a substantial controversy of sufficient immediacy and reality concerning the parties' respective interpretation of these agreements.

31. Chevron desires a judicial determination of the respective rights and duties of Chevron and Skanska under the EPC Contract and Skanska Subcontract, and a declaration as to whether Skanska is contractually obligated to produce all documents relating to the Skanska Arbitration, including, but not limited to, transcripts of sworn deposition and hearing testimony, and copies of negotiated settlements between Skanska and Tetra Tech that Tetra Tech alleges that it entered into with Skanska, as well as any correspondence related thereto.

32. A judicial declaration is necessary and appropriate at this time under the circumstances in order for Chevron to ascertain its rights under the agreements, and to effectively present its case in the Chevron/TT Arbitration.

33. Wherefore, Chevron is entitled to declaratory relief against Skanska, as set forth in the below prayer for relief.

## SECOND CAUSE OF ACTION

### [Injunctive Relief]

34. Chevron realleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

35. Chevron has previously demanded in writing – and by this Complaint, again demands – that Skanska submit or allow access to and assist Chevron in inspecting relevant documents relating to the Skanska Arbitration, but, to date, Skanska has refused to honor its contractual obligation to comply with this audit.

36. By reasons of this refusal to comply, Chevron has suffered, and will continue to suffer, extreme hardship and actual and impending irreparable injury because not allowing

discovery of the Skanska Arbitration documents would substantially prejudice Chevron's ability to present its case in the Chevron/TT Arbitration, which is scheduled to begin on October 14, 2019.  Chevron must be afforded an opportunity to access and review this information in order to prepare its defense of Tetra Tech's central claim and its prosecution of its affirmative claims in the Chevron/TT Arbitration.

37. Chevron has no adequate remedy at law.

38. Wherefore, Chevron is entitled to injunctive relief to compel Skanska to comply with Chevron's audit request, as set forth in the below prayer for relief.

### THIRD CAUSE OF ACTION

### [Breach of Contract – Specific Performance Compelling Audit]

39. Chevron realleges and incorporates herein by reference each and every allegation in the preceding paragraphs.

40. Chevron is informed and believes, and thereon alleges, that Chevron was an expressly intended third-party beneficiary of the Skanska Subcontract entered into between Tetra Tech and Skanska.

41. Under the Skanska Subcontract, Skanska expressly agreed to abide by and assume all duties owed by Tetra Tech to Chevron, as specified in the EPC Contract.  Skanska also agreed to perform work on the condition that such work was subject to Chevron's approval and satisfaction.  As such, Chevron was an expressly intended third-party beneficiary of the Skanska Subcontract and the flow-down obligations necessarily include Skanska's compliance with Chevron's audit rights under Section 26 of the EPC Contract.

42. The EPC Contract further provides Chevron with specific authority, sufficiently certain in its terms, to access and inspect all records extending not only to cost-related information for the Project, but all documents related to Tetra Tech's performance of work on the Project, including without limitation documents related to Chevron's potential "liability" to Tetra Tech, which is at issue in the Chevron/TT Arbitration.

43. Accordingly, the scope of the audit clause covers all documents related to Chevron's potential liability and Tetra Tech's performance of work, including without limitation

1  all documents related to the Skanska Arbitration.

2  44.  Chevron has requested a complete audit so that it may review the necessary documents relating to the Skanska Arbitration. Under its flow-down obligations, Skanska is contractually obligated to produce these documents at Chevron's request. *See* Ex. B. Skanska has failed to comply with Chevron's request, which constitutes a breach of the Skanska Subcontract. Chevron seeks to enforce Skanska's obligation to comply with an audit as a third-party beneficiary to the Skanska Subcontract.

45.  Chevron has at all times duly performed any and all contractual duties under or pursuant to any of the agreements.

46.  Wherefore, Chevron is entitled to specific performance against Skanska, as set forth in the below prayer for relief.

## FOURTH CAUSE OF ACTION

### [Express Indemnity]

47.  Skanska is contractually obligated to defend, indemnify, and hold harmless Chevron for any claims, losses, or damages arising from its respective Project work, including under Section 9.1 of the Skanska Subcontract.

48.  Accordingly, Skanska is obligated to defend, indemnify, and hold harmless Chevron from and against any liability that Chevron may incur in connection with Tetra Tech's allegations in the Chevron/TT Arbitration.

49.  Chevron has incurred and continues to incur necessary and reasonable expenses, including attorneys' fees and costs, in excess of $75,000, in defending itself against Tetra Tech's additional work and delay claims in the Chevron/TT Arbitration, which arise out of Skanska's scope of work and which fall under Skanska's defense and indemnity obligations toward Chevron. Moreover, while Chevron denies liability in the Chevron/TT Arbitration, to the extent Chevron is found liable, Chevron will incur damages and losses arising from Skanska's performance on the Project. This incursion of expenses, damages, and losses by Chevron entitles Chevron to a defense and indemnity under the EPC Contract and the Skanska Subcontract.

50.  Chevron has previously demanded in writing – and by the Complaint, again

demands – that Skanska defend, indemnify, and hold harmless, and otherwise reimburse Chevron for the expense, losses, and damages that it has suffered and will suffer, but, to date, Skanska has failed to honor its contractual defense and indemnity obligations.

51. Skanska is obligated to indemnify Chevron for any and all sums Chevron incurs in connection with defending itself in the Chevron/TT Arbitration and in prosecuting this Complaint, including, but not limited to, judgments, payments, costs of suit, investigative costs, and/or other related cost in an amount to be proved at trial, but in excess of $75,000.

## PRAYER FOR RELIEF

Wherefore, Chevron respectfully requests that the Court enter and award the following relief:

**As to the First Cause of Action:**

1. A declaration of the rights and duties of the parties as set forth herein;

2. That judgment be entered in favor of Chevron, which judgment should declare that Skanska is contractually obligated to submit, or allow access to and assist Chevron in inspecting documents relating to the Skanska Arbitration, including, but not limited to, transcripts of sworn deposition and hearing testimony, and copies of negotiated settlements between Skanska and Tetra Tech that Tetra Tech alleges that it entered into with Skanska, as well as any correspondence related thereto;

3. For costs of suit incurred herein; and

4. For any such other and further relief as the Court deems just and proper.

**As to the Second Cause of Action:**

1. That Skanska be compelled to forthwith submit, or allow access to and assist Chevron in inspecting documents relating to the Skanska Arbitration, including, but not limited to, transcripts of any sworn deposition or hearing testimony from the Skanska Arbitration, and copies of negotiated settlement agreements between Skanska and Tetra Tech that Tetra Tech alleges it entered into with Skanska, as well as any correspondence related thereto;

2. For costs of suit incurred herein; and

3. For such other and further relief as the Court deems just and proper.

**As to the Third Cause of Action:**

1. That Skanska be compelled to forthwith submit, or allow access to and assist Chevron in inspecting documents in Tetra Tech's possession or control relating to the Skanska Arbitration, including, but not limited to, transcripts of any sworn deposition or hearing testimony from the Skanska Arbitration, and copies of negotiated settlement agreements between Skanska and Tetra Tech that Tetra Tech alleges it entered into with Skanska, as well as any correspondence related thereto.

2. For costs of suit incurred herein; and

3. For such other and further relief as the Court deems just and proper.

**As to the Fourth Cause of Action:**

1. For indemnity in the amount of any judgment assessed against Chevron in connection with the Skanska Complaint;

2. For costs incurred in connection with the Chevron/TT Arbitration;

3. For costs of suit incurred herein; and

4. For any such other and further relief as the Court deems just and proper.

Dated: July 18, 2019            **VARELA, LEE, METZ & GUARINO, LLP**

By: */s/ Nicholas A. Merrell*
    Bennett J. Lee
    Nicholas A. Merrell
    Steven P. Chasey
    Paolo A. Hermoso
    Attorneys for Plaintiffs
    Chevron Mining Inc. and Chevron Environmental Management Company